## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 25-cv-20713-BLOOM/Elfenbein

EXOTROPIN, LLC,

      Plaintiff,

v.

DP DERM, LLC and BIOSOFT
(AUSTRALIA) PTY LTD,

      Defendants.

_____/

### <u>ORDER ON MOTION TO DISMISS</u>

**THIS CAUSE** is before the Court upon Defendant DP Derm, LLC ("DP Derm") and Biosoft (Australia) Pty Ltd ("Biosoft") (collectively "Defendants") Motion to Dismiss Complaint, or in the Alternative, to Transfer this Case to the United States District Court for the District of Utah ("Motion"), ECF No. [27]. Exotropin ("Plaintiff") filed a Response in Opposition ("Response"), ECF No. [36], to which Defendants filed a Reply, ECF No. [41]. The Court has carefully reviewed the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is denied.

### I.    BACKGROUND

Plaintiff, a research and development firm that formulates skin care solutions, is duly organized and existing under the laws of Delaware and has its principal address in Delaware. ECF No. [15] at ¶¶ 3, 22. Plaintiff's cosmetic products can be found within over fifty retail locations throughout the United States — fifteen of which are in South Florida — as well as through online retailers. *Id.* at ¶ 25.

Biosoft is an Australian proprietary limited company with a business address in Australia. *Id.* at ¶ 5. The U.S. distributor for Biosoft, DP Derm, is a Florida limited liability company duly organized and existing under the laws of Florida. *Id.* at ¶¶ 4, 8. DP Derm also conducts business in Florida and has a principal address in Miami. *Id.* Biosoft has authorized DP Derm to sell its products, including those that bear the "EXO SKIN" mark, in the United States and the Southern District of Florida. *Id.* at ¶ 8. The goods bearing the mark are advertised and offered for sale on two websites, which can be accessed from anywhere in the U.S. *Id.* at ¶¶ 36-37.

On April 11, 2024, Biosoft, despite knowing full well of Plaintiff and its prior use of its 'EXO SKIN SIMPLE' mark and 'EXO SKIN SIMPLE' Registration, filed multiple U.S. trademark applications for its own "EXO SKIN" mark for competing cosmetic goods. *Id.* at ¶ 33.

Several months later, on September 11, 2024, Biosoft filed three Notices of Opposition in the United States Patent and Trademark Office Trademark Trial and Appeal Board ("TTAB") against Plaintiff's applications for the "EXO SKIN" mark, "EXO BODY" mark, and "EXO MEN" mark. *Id.* at ¶ 40. In the TTAB proceedings, Biosoft alleged that Plaintiff's three marks are likely to be confused with the "EXO SKIN" mark that Biosoft uses for its products. *Id.* at 41. Plaintiff argued that Biosoft has made "the same allegations of likelihood of confusion between [Plaintiff's] "EXO SKIN SIMPLE" Mark and Biosoft's "EXO SKIN" mark being made by [Plaintiff] in the instant action." *Id.* at 42.

On September 24, 2024, Plaintiff sent a cease-and-desist letter to Biosoft's U.S. counsel, demanding that Biosoft cease and desist using the infringing mark, abandon its trademark applications, and withdraw the TTAB proceedings. *Id.* at ¶ 43. On October 10, 2024, Biosoft's counsel responded, requesting "'another two weeks to prepare a substantive response to [the] letter' and making the representation that he will be 'working with [his] client on a substantive

response . . . including a potential resolution of the present dispute." *Id.* at ¶ 44 (emphasis omitted). That same day, Biosoft filed an action for declaratory judgment in the District of Utah. *Id.* at ¶ 45.

Without divulging that an anticipatory action had been filed in the District of Utah, and under the pretense that the parties were engaged in settlement discussions, Biosoft consented to a thirty-day extension of time of all deadlines in the TTAB Proceedings, including Plaintiff's deadline to file its responses to the Notices of Opposition. *Id.* at ¶ 46. Moreover, Plaintiff alleges that Biosoft, claiming that a settlement proposal would still be forthcoming, consented to two additional thirty-day extensions of time of all deadlines in the TTAB proceedings, without notifying Plaintiff of the action that had been filed in the District of Utah. *Id.* at ¶ 47. Biosoft never served Plaintiff with initial process in that action, and when the deadline to serve Plaintiff approached, Biosoft filed a second action in the District of Utah seeking the same relief. *Id.* at ¶ 48.

Plaintiff argues that it was only after filing this action for infringement in the Southern District of Florida and serving DP Derm that Biosoft proceeded to serve Plaintiff with initial process related to the Utah action. *Id.* at ¶ 49. To date, despite repeated representations from Biosoft's counsel that Biosoft would be making a settlement proposal, no proposal has been received. *Id.* at ¶ 50.

Defendants seek dismissal of the Amended Complaint, asserting that the Court lacks subject matter jurisdiction, or, in the alternative, Defendants seek to transfer this case to the United States District Court for the District of Utah under the first-to-file rule, or 28 U.S.C. § 1404(a). ECF No. [27]. Defendants argue that venue in Utah is proper because Plaintiff sent a cease-and-desist letter to the Utah counsel of all three Defendants, Plaintiff has a website accessible to Utah

residents, and one of Plaintiff's thirty-five retail locations is in Park City, Utah. ECF No. [27-1] Ex. A at ¶¶ 6-8.

Plaintiff responds that Defendants' Motion should be denied because Defendants are attempting to improperly leverage the first-to-file rule and the District of Utah is not a proper venue. ECF No. [36] at 1. First, Plaintiff argues that Defendants' filing of two declaratory actions in the District of Utah was anticipatory and urges the Court to exercise its discretion to decline application of the first-to-file rule. *Id.* at 2. Plaintiff further asserts that transfer to Utah is improper because the District of Utah lacks personal jurisdiction over Plaintiff, and the 28 U.S.C. § 1404 venue-transfer factors do not favor Defendants. *Id.* at 6-11.

Defendants reply that they filed their declaratory judgment actions in Utah in good faith after Plaintiff threatened litigation. ECF No. [41] at 3. They further contend that the first-to-file rule strongly supports dismissal or transfer of this action. *Id.* Finally, Defendants assert that Plaintiff is subject to personal jurisdiction in Utah because it purposefully directed its conduct toward Utah by sending a cease-and-desist letter, operating a website that sells products to Utah residents, and maintaining a retail location in Utah. *Id.* at 5.

## II.    LEGAL STANDARD

### A.  First-to-File Rule

"The first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." *Alers v. Robinhood Fin. LLC*, Case No. 21-CV-61848, 2022 WL 2431522, at *2 (S.D. Fla. July 1, 2022) (quoting *Collegiate Licensing Co. v. Am. Cas. Co. of Reading*, Pa., 713 F.3d 71, 78 (11th Cir. 2013)). In applying the rule, courts consider three factors: "(1) the chronology of the two actions, (2) the similarity of the parties, and (3) the similarity of the issues." *Women's Choice*

*Pharms., LLC v. Rook Pharms., Inc.*, Case No. 16-cv-62074, 2016 WL 6600438, at *2 (S.D. Fla. Nov. 8, 2016). Neither the parties nor the issues need to be identical; they just need to overlap. *Kelly v. Gerber Prods. Co.*, CASE NO. 21-60602-CIV, 2021 WL 2410158, at *1 (S.D. Fla. June 11, 2021).

[W]hile the forum where an action is first filed typically is given priority over subsequently-filed actions, it is appropriate to depart from the general rule when there is a showing that the balance of convenience tips in favor of the second forum or that there are special circumstances which justify giving priority to the second action." *Mod. Pharm., LLC v. J.M. Smith Corp.*, CASE NO. 19-20369-CIV, 2019 WL 13223825, at *2 (S.D. Fla. Apr. 26, 2019) (quoting *Philibert v. Ethicon, Inc.*, No. 04-81101-CIV., 2005 WL 525330, at *1 (S.D. Fla. Jan. 14, 2005)). The party opposing jurisdiction in the first-filed forum bears the burden of demonstrating such compelling circumstances. *Women's Choice*, 2016 WL 6600438, at *2 (citing *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005)).

One recognized compelling circumstance is when the first-filed "action was filed in apparent anticipation of the pending proceeding" in order to forum shop. *See Manuel*, 430 F.3d at 1135 (quoting *Ven-Fuel, Inc. v. Dep't of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982)). The "anticipatory suit exception . . . applies when one party, on notice of a potential lawsuit, files a declaratory judgment action in its home forum." *Collegiate Licensing*, 713 F.3d at 79 (citing *Manuel*, 430 F.3d at 1135). In such cases, courts have discretion to decline application of the first-filed rule and may instead retain jurisdiction over the second-filed action. *See id.*

### B. Transfer of Venue under 28 U.S.C. § 1404(a)

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have

been brought[.]" The statute affords the district court broad discretion in deciding whether transfer is appropriate. *Fruitstone v. Spartan Race Inc.*, 464 F. Supp. 3d 1268, 1277 (S.D. Fla. 2020) (citing *Osgood v. Disc. Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1263 (S.D. Fla. 2013) (noting that the "standard for transfer under 28 U.S.C. § 1404(a) leaves much to the broad discretion of the trial court")). The party seeking transfer bears the burden of showing the transfer is justified. *Fruitstone*, 464 F. Supp. 3d at 1277 (citing *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989)).

Courts apply a two-step analysis under § 1404(a). *Id.* First, the court must determine whether the action "might have been brought" in the proposed transferee district — that is, whether that court has subject-matter jurisdiction, proper venue, and personal jurisdiction over the defendant. *Id.* (quoting *Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985)). Second, the court assesses "whether convenience and the interest of justice require transfer to the requested forum." *Go 770 Mgmt. LLC v. Mt. Hawley Ins. Co.*, Case No. 24-CV-61176, 2024 WL 4581259, at *1 (S.D. Fla. Oct. 25, 2024) (quoting *Osgood*, 981 F. Supp. at 1263). In analyzing this second prong, courts consider the factors outlined in 28 U.S.C. § 1404(a). These factors include:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Id.* (quoting *Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1275 (S.D. Fla. 2011)).

While those factors guide the analysis, courts traditionally give significant deference to a plaintiff's choice of forum. *Young v. Garlapati*, Case No. 24-20919-CV, 2024 WL 5147404, at *1 (S.D. Fla. Aug. 5, 2024) (citing *In re Ricoh*, 870 F.2d at 573). "'[U]ltimately, transfer is only appropriate where the balance of convenience of the parties strongly favors the defendant.'" *Fruitstone*, 464 F. Supp. 3d at 1277 (quoting *Steifel Labs., Inc. v. Galderma Labs., Inc.*, 588 F. Supp. 2d 1336, 1339 (S.D. Fla. 2008)); *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996)).

## III.   DISCUSSION

### A.  The Anticipatory Suit Exception to the First-to-File Rule

Defendants first argue that this Court lacks jurisdiction under the first-to-file rule. *Id.* at 4. While Plaintiff does not dispute the application of the first-to-file rule in this matter,[1] Plaintiff urges the Court to reject Defendants' abuse of the first-to-file rule – namely, making "false representations in the instant Motion or to another tribunal" and filing "two declaratory actions in clear anticipation of this suit." ECF No. [36] at 4. Plaintiff asserts that it sent Defendant a cease-and-desist letter on September 24, 2024, addressed to Defendants' Utah-based counsel. *Id.* at 4. On October 10, 2024, Defendants' counsel responded, "requesting two weeks to prepare a response and making the representation that a potential resolution of the dispute would be forthcoming." *Id.* At that time, Defendant also consented to an extension of time in a related

---

[1] The Court finds that the three factors required to support a finding of the first-to-file rule's applicability are present. First, the Utah Action was filed on January 8, 2025, whereas the Florida Action was not filed until February 14, 2025. *See* ECF No. [27] at 4. Regarding the similarity of the parties, although DP Derm, LLC and Dermapenworld FZ LLC are not parties to the Utah Action, precise identity is not required. *Id.* Biosoft and Exotropin are common, Dermapenworld FZ LLE is the alleged assignee of ownership for Biosoft's "EXO SKIN" trademarks, and DP Derm is Biosoft's alleged distributor. *Id.* Lastly, the Utah Action and the Florida Action — one seeking a declaration of non-infringement of "EXO SKIN" and the other alleging infringement of "EXO SKIN SIMPLE" by "EXO SKIN" — are similar enough to trigger the first-to-file rule. *Id.* at 5.

opposition proceeding before the TTAB — a proceeding that involves the same marks at issue in this case — and "represent[ed] to the TTAB that settlement negotiations were ongoing." *Id.*

On the same day, October 10, 2024, Plaintiff asserts that Defendants' counsel filed the first action for declaratory relief against Plaintiff in the District of Utah without serving or notifying Plaintiff of the pending action. *Id.* Plaintiff contends that over the following months, "[Defendant] continued to represent that a settlement would be forthcoming both to Plaintiff and in agreeing to continue to represent to the TTAB that settlement negotiations were ongoing, despite filing a second action for declaratory relief." *Id.* Throughout the entirety of the settlement negotiations, Plaintiff argues Defendant never notified it of the action until Plaintiff filed its case in the Southern District of Florida. *Id.*

Plaintiff argues that Biosoft's two declaratory judgment actions were made in "clear anticipation of this suit" and "present precisely the kind of circumstances that warrant the Court exercising its discretion and departing from the first-to-file rule." ECF No. [36] at 3. Defendants reply that they filed their declaratory judgment action in Utah in good faith after receiving a cease-and-desist letter threatening litigation. ECF No. [41] at 2. For support, Defendants cite *Collegiate Licensing Co. v. Am. Cas. Co. of Reading*, Pa., 713 F.3d 71, 76 (11th Cir. 2013), for the principle that it "expressly state[s] that filing a declaratory action after receiving a threat of litigation is not improper or bad faith." ECF No. [41] at 2. Defendants also rely on *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 837 (10th Cir. 2020), to argue that "the Tenth Circuit has held, 'a cease-and-desist letter alone can create a case or controversy for declaratory judgment.'" ECF No. [41] at 2.

However, neither *College Licensing* nor *XMission* support the propositions for which each is cited. In *Collegiate Licensing*, the Eleventh Circuit affirmed the application of the first-to-file rule where the district court enjoined the appellants from pursuing intervention complaints in a

second-filed action in California. 713 F.3d at 78-80. The court's analysis focused on the appellant's intervention complaints and their relation to the first-filed declaratory judgment, not on whether the original declaratory judgment action in Georgia was anticipatory or filed in bad faith. *Id.* Moreover, contrary to Defendants' representation, *XMission* did not involve a cease-and-desist letter or a declaratory judgment action. Rather, the Tenth Circuit addressed whether a defendant had purposefully availed itself of a forum by sending mass marketing emails received in that state — an issue of personal jurisdiction, not anticipatory filing or declaratory judgment procedure, as Defendants suggest. 955 F.3d at 837-39.

In support of its argument that the first-filed action was anticipatory and filed in bad faith, Plaintiff cites *Raimbeault v. Accurate Machine & Tool, LLC*, No. 14–CIV–20136., 2014 WL 5795187, at *3 (S.D. Fla. Oct. 2, 2014) and *Emergency Dictation Services, Inc. v. CBay Systems, Ltd.*, No. 05-72137., 2005 WL 2769006, at *5 (E.D. Mich. Oct. 25, 2005). In *Raimbeault*, this Court declined to apply the first-to-file rule where a defendant's use of the rule "appear[ed] to result from gamesmanship." 2014 WL 5795187, at *5. The court emphasized that courts "are loathe to reward such self-serving manipulation of the first-filed rule," particularly where a party filed a secondary action in another state in an effort to undermine ongoing litigation. *Id.* at *16-*17. Similarly, in *Emergency Dictation*, the court refused to apply the first-to-file rule, finding that the defendant's declaratory judgment action in Maryland was an anticipatory suit likely filed to secure a preferred forum. 2005 WL 2769006, at *3-*4. There, the court noted that the defendant filed the Maryland suit shortly after receiving the plaintiff's letter proposing a settlement amount and before notifying the plaintiffs, further supporting the inference of forum shopping and procedural gamesmanship. *Id.* at *5.

Defendants assert that *Raimbeault* and *Emergency Dictation* support their position, asserting that "Biosoft's actions reflect good faith, while Plaintiff's subsequent filing of parallel litigation is consistent with the described bad faith actions." ECF No. [41] at 4. Defendants argue that Plaintiff, a "New York-based Delaware LLC," chose Florida, where only DP Derm resides, despite claiming nationwide sales, a widely accessible website, and exclusively retailing its products through third parties . . . suggesting forum shopping, potentially for Florida's faster docket." *Id.*

Defendants' argument is unpersuasive. In *Emergency Dictation*, the plaintiff sent two letters demanding full payment for services rendered, one of which threatened legal action if the defendant failed to respond. 2005 WL 2769006, at *1. The parties then entered into settlement negotiations over the amount due, which continued for approximately two months. *Id*. During those discussions, the defendant filed a declaratory judgment action in Maryland, despite being "well-aware of [p]laintiff's location in Michigan" and "likely presum[ing] that [p]laintiff's potential complaint would be filed here." *Id.* at *3. Similarly, in this case, Plaintiff initiated litigation discussions by sending a cease-and-desist letter to Defendants' U.S. counsel on September 24, 2024. ECF No. [15] at ¶ 43. Defendant responded on October 10, 2024, requesting two weeks to prepare a response, and "representing that settlement negotiations were ongoing." ECF No. [15] at ¶ 44; ECF No. [36] at 4. Yet, on that same day, Defendant filed a declaratory judgment action in the District of Utah. *Id.* Although Plaintiff is not tied to a single jurisdiction — as was the plaintiff to Michigan in *Emergency Dictation* — the cease-and-desist letter was sent by Plaintiff's Florida-based counsel, ECF No. [27] Ex. A at 12, making it reasonable that any ensuing litigation would be filed in Florida. The record supports that Defendants filed an anticipatory action in Utah to preempt the likely forum in the Southern District of Florida. Accordingly, the Court

finds that a departure from the first-to-file rule is warranted, and Defendants' Motion to Dismiss is denied.

### B. Defendants' Alternative Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a)

#### i.    Personal Jurisdiction

To establish personal jurisdiction over an out-of-state plaintiff, the defendant must make a *prima facie* showing that "jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *C5 Med. Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1322-23 (10th Cir. 2019) (citing *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010)). Due process requires that the out-of-state plaintiff both "purposefully established minimum contacts within the forum State" and that the "assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

A plaintiff's contact with the forum state may give rise to either specific or general jurisdiction. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). Specific jurisdiction calls for a two-step inquiry: "(a) whether the [defendants] [have] shown that the [plaintiff] has minimum contacts with the forum state; and, if so, (b) whether the [plaintiff] has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. at 476-77). Alternatively, general jurisdiction arises where the party's contacts with the forum state are "so 'continuous and systematic' as to render [it] essentially at home" there. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

Defendants argue that Plaintiff's website, which sells products to Utah residents, supports specific jurisdiction. ECF No. [41] at 5 (citing *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011)). While Defendants are correct that "jurisdiction exists when online activity demonstrates purposeful availment," ECF No. [41] at 5 (citing *Shrader*, 633 F.3d at 1238), the court in *Shrader* did not find that the online activity demonstrated purposeful availment. Rather, the court in *Shrader* emphasized that the "maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state." 633 F.3d at 1241. Defendants also argue that Plaintiff's cease-and-desist letter sent to Utah counsel supports specific jurisdiction. ECF No. [41] at 5. For support, Defendants cite *XMission*, 955 F.3d 833, arguing that "an intentional act directed at the forum state that gives rise to the claim supports jurisdiction." ECF No. [41] at 5. However, as previously pointed out, no such quoted language appears in *XMission*.

Rather, *XMission* holds that "[p]urposeful direction may . . . be established . . . when an out-of-state [Plaintiff's] intentional conduct targets and has substantial harmful effects in the forum state." 955 F.3d at 841 (citing *Old Republic*, 877 F.3d at 907). To demonstrate purposeful availment, Defendants must show "(a) an intentional action that was (b) expressly aimed at the forum state with (c) knowledge that the brunt of the injury would be felt in the forum state." *Id*. In this case, the cease-and-desist letter Plaintiff sent to Defendants' Utah-based counsel neither caused substantial harmful effects in Utah nor would the *brunt* of any resulting injury — such as Defendants being prohibited from selling their products — be felt in Utah, given Defendants' broad domestic and international presence.

Further, as Plaintiff argues, a cease-and-desist letter is not a "proper basis for jurisdiction." ECF No. [36] at 10 (quoting *C5 Med.*, 937 F.3d at 1324). In *C5 Med.*, the Tenth Circuit, in

reversing the district court's denial of the motion to dismiss, "agree[d] with the Federal Circuit that a single cease-and-desist letter is insufficient to confer jurisdiction in a declaratory judgment action[.]" 937 F.3d at 1324. The Federal Circuit has also explained that "[p]rinciples of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360-61 (Fed. Cir. 1998); *see also Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011). Similarly, here, Plaintiff's act of informing Defendants of the priority of its Mark does not constitute consent to jurisdiction in Utah. In short, neither Plaintiff's widely accessible website nor a single cease-and-desist letter provides a sufficient basis for specific jurisdiction over Plaintiff in Utah.

Although Defendants make no express argument as to general jurisdiction over Plaintiff, Defendants argue that Plaintiff's retail location in Utah establishes "substantial and continuous Utah contacts." ECF No. [41] at 5. Plaintiff disputes that it has a Utah retail location or another location "anywhere in the world." ECF No. [36] at 9. Plaintiff asserts that the location belongs to a customer who purchases Exoceuticals products wholesale and offers its members the ability to order products. ECF No. [36-1] Ex. A at 4. Other than that location — which Plaintiff argues has no physical Exoceuticals inventory for purchase — Plaintiff does not transact business in Utah. ECF No. [36-1] Ex. A at 4.

Whether the Utah location is Plaintiff's own retail location or belongs to a third-party retailer is immaterial to the jurisdictional inquiry because the central question is whether Plaintiff's single retail location would constitute contacts "so continuous and systematic as to render [Plaintiff] essentially at home in the forum state." *Goodyear*, 564 U.S. at 919 (2011). Defendants offer no case law to support the assertion that a single retail location — whether owned by Plaintiff

or a third party — establishes "continuous and systematic" contacts sufficient for general jurisdiction. Because Defendants provide no other evidence showing that Plaintiff has established a meaningful relationship with Utah, there is no basis for general jurisdiction over the Plaintiff in that state.

### ii.    § 1404(a) Factors

"Transfer can only be granted where the balance of convenience of the parties strongly favors the defendant." *Tuuci Worldwide, LLC v. S. Frankford & Sons, Inc.*, CASE NO. 23-20615-CIV, 2023 WL 5275187, at *8 (S.D. Fla. Aug. 16, 2023). The Court, therefore, will examine and weigh the factors individually.

### a. Convenience of the Witnesses

"The convenience of the party and non-party witnesses is an important factor in the analysis of whether to grant a motion to transfer. *Id.* at *9. In support of this factor, Defendants argue that the District of Utah is a more convenient forum because counsel for all three Defendants resides in Utah. ECF No. [27] at 6. However, Defendants offer no argument or evidence identifying any prospective party or non-party witnesses, nor do they demonstrate that any such witnesses would be inconvenienced by litigating in the Southern District of Florida. *See Gubarev v. Buzzfeed, Inc.*, 253 F. Supp. 3d 1149, 1164 (S.D. Fla. 2017) ("[T]he party seeking the transfer must support its motion by clearly specifying the key witnesses to be called and particularly stating the significance of their testimony." (citing *Mason v. Smithkline Beecham Clinical Lab'ys*, 146 F. Supp. 2d 1355, 1362 (S.D. Fla. 2001))). Accordingly, Defendant has failed to demonstrate that the convenience of the witnesses weighs in favor of transfer.

### b.   Location of Relevant Documents and Ease of Access to Proof

The Court has recognized that "'[p]roducing documents and other files for litigation . . . is not usually a burdensome ordeal due to technological advancements, such as electronic document-imaging and retrieval.'" *Tuuci*, 2023 WL 5275187, at *11 (quoting *Kenneth F. Hackett & Assocs., Inc. v. GE Cap. Info. Tech. Sols., Inc.*, Case No. 10-20715-Civ, 2010 WL 3056600, at *5 (S.D. Fla. Aug. 4, 2010)). Still, Defendant maintains that "witness/evidence accessibility" favors transfer. ECF No. [27] at 6. Defendants do not explain why producing documentary evidence in Florida would be burdensome, nor do they identify the specific evidence at issue or its location. *See Tuuci*, 2023 WL 5275187, at *11 (holding that this factor does not support transfer where the defendant failed to describe the nature or location of the referenced documents or explain why their transfer would be burdensome); *see also Reichard v. Henderson, Covington, Messenger, Newman & Thomas Co., L.P.A.*, Case No. 18-cv-61128, 2018 WL 5016285, at *3 (S.D. Fla. Oct. 16, 2018) (noting that the location of relevant records "warrants little weight" where the defendant has failed to show why access and production, "especially in this day and age," would be unduly burdensome in the chosen forum). In contrast, Plaintiff argues that it has already filed initial disclosures that identify evidence expected to be found in Florida. ECF No. [36] at 12. Accordingly, this factor does not favor transfer.

### c.   Convenience of the Parties

"'[T]he convenience of the parties . . . concerns the appearance of employees at court, and, to some extent, the appearance of counsel.'" *Tuuci*, 2023 WL 5275187, at *11 (quoting *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1328 (M.D. Fla. 2010)). This analysis requires weighing any inconvenience to Defendants against the corresponding burden on Plaintiff if the case were transferred. *Id.* at *11 (citing *Burger King Corp.*

*v. Thomas*, 755 F. Supp. 1026, 1030 (S.D. Fla. 1991)). Here, Defendants offer no argument on this factor beyond citing the location of their Utah-based counsel. ECF No. [27] at 6. In cases such as this, where "transfer merely shifts the inconvenience from one party to another, Plaintiff's choice of forum should remain." *Fruitstone*, 464 F. Supp. 3d at 1281 (quoting *Mason*, 146 F. Supp. 2d at 1361). Accordingly, Defendants have not met their burden to show that the convenience of the parties favors transfer. *See id.* (explaining that when transfer simply redistributes inconvenience, this factor is neutral).

### d.  Locus of Operative Facts

"The locus of operative facts is a primary factor in determining whether to transfer venue." *Implant Seminars, Inc. v. Lee*, Case No. 18-23097-Civ, 2019 WL 1979365, at *12 (S.D. Fla. May 3, 2019) (quoting *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 19 (S.D.N.Y. 2012)). In trademark infringement cases, "the locus of operative facts . . . is often the headquarters of the allegedly infringing entity, where design and development . . . took place." *Id.* at *5 (quoting *Dohler S.A. v. Gift Guru*, Case No. 16-23137-CIV, 2017 WL 4621098, at *8 (S.D. Fla. Oct. 16, 2017)); *see also Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1276 (S.D. Fla. 2011) ("Several district courts have held that the '"center of gravity"' for a patent infringement case is where the accused product was designed and developed.'" (quoting *Trace-Wilco, Inc. v. Symantec Corp.*, No. 08–80877–CIV., 2009 WL 455432, at *2-*3 (S.D. Fla. Feb. 23, 2009)).

However, as Plaintiff correctly notes, the locus of operative facts in an infringement action may also be "wherever the consuming public is likely to be confused by the alleged infringement." ECF No. [36] at 14 (citing *Iconic Leaf Cigars LLC v. Kendall*, Case No. 13-cv-23345, 2013 WL 12093806, at *2 (S.D. Fla. Nov. 22, 2013)). In cases that entail multiple loci of operative facts, courts have viewed this factor neutrally. *See e.g.*, *Clinton v. Sec. Benefit Life Ins. Co.*, Case No.

19-24803-Civ, 2020 WL 6120565, at *6 (S.D. Fla. June 29, 2020) ("When there are multiple loci of operative facts and no single locus is primary in this respect, courts treat this factor as neutral[.]").

Here, Defendants have not asserted that the design or development of the allegedly infringing products occurred in Utah. Instead, in support of this factor, they argue that the locus of facts, including "[Plaintiff's] Utah retail location" and the "cease-and-desist letter to Utah counsel," support transfer. ECF No. [27] at 6. Nevertheless, Defendants cite no authority to support the notion that a retail location that lacks in-store inventory, ECF No. [36-1] Ex. A ¶ 17, constitutes a place where consumer confusion is likely. Further, a cease-and-desist letter sent from Florida to Utah counsel cannot reasonably be characterized as contributing to consumer confusion regarding the allegedly infringed product. This factor does not support transfer because Florida is at least equally, if not more, likely to be a site of potential consumer confusion, especially in light of the fact that only .001% of Plaintiff's overall sales take place in Utah, ECF No. [36] at 8.

### e.  Availability of Process to Compel Unwilling Witnesses

Courts generally transfer when key witnesses cannot be compelled to testify in the current forum but could be subpoenaed in the transferee court. *Tuuci*, 2023 WL 5275187, at *12 (citing *Wi-LAN USA, Inc. v. Apple Inc.*, No. 12–cv–24318, 2013 WL 1343535, at *4 (S.D. Fla. April 2, 2013)). Here, however, "Defendant[s] [have] not provided evidence that any witnesses will not be present for trial or will be unable or otherwise unwilling to give testimony." *Fruitstone,* 464 F. Supp. 3d at 1282 (holding that this factor does not favor transfer where no information has been presented regarding the availability or willingness of witnesses to testify at trial). In fact, Defendant has not identified any witnesses at all. Accordingly, this factor does not weigh in favor of transfer. *Id.*; *see Perlman v. Delisfort-Theodule*, CASE NO. 09-80480-CIV, 2010 WL

11504751, at *2 (S.D. Fla. Mar. 30, 2010), *aff'd*, 451 F. App'x 846 (11th Cir. 2012) (denying transfer where the movant "identified no witnesses who would be unwilling to travel to Florida to testify or who could not be compelled to do so"); *cf. Game Controller Technology LLC v. Sony Computer Ent. Am. LLC*, 994 F. Supp. 2d 1268, 1275 (S.D. Fla. 2014) (finding this factor to favor transfer where the movant identified specific, material third-party witnesses who could not be compelled to testify in the current forum).

### f.   Relative Means of the Parties

Defendants have made no argument as to this sixth factor, but "[t]his is not a case where the relative means of the parties 'differ greatly.'" *Tuuci*, 2023 WL 5275187, at *13 (quoting *Alexandre v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, Case No. 0:20-cv-60130, 2020 WL 3266072, at *4 (S.D. Fla. Mar. 30, 2020) (finding this factor favored the plaintiff where the defendant was a corporate insurance carrier and the plaintiff was an individual). Plaintiff argues that while it has yet to receive financial information from Defendants, "both parties appear to have 'adequate means' to litigate this case." ECF No. [36] at 15 (quoting *Tuuci*, 2023 WL 5275187, at *34). The Court agrees. Absent any showing of financial hardship Defendants would face by litigating in this forum, when two large businesses possess considerable resources, "the relative means of the parties does not favor transfer." *Tuuci*, 2023 WL 5275187, at *34 (quoting *Plain Bay Sales, LLC v. Gallaher*, CASE NO. 18-80581-CIV, 2018 WL 8899305, at *13 (S.D. Fla. July 11, 2018)); *see also Mod. Pharm., LLC v. J.M. Smith Corp.*, CASE NO. 19-20369-CIV, 2019 WL 13223825, at *5 (S.D. Fla. Apr. 26, 2019) ("Because the Court is not supplied with adequate information on the relative means of the parties, this factor is neutral.").

### g. Forum's Familiarity with Governing Law

The seventh factor considers the forum's familiarity with the governing law. While "district courts often have little trouble applying the law of other states," *Clinton*, 2020 WL 6120565, at *6 (quoting *Trans Am Worldwide, LLC v. JP Superior Sols.*, *LLC*, Case No. 4:17cv560, 2018 WL 3090394, at *10 (N.D. Fla. Apr. 30, 2018), this factor weighs in favor of retaining the case in the forum where local law claims are at issue. *See Tuuci*, 2023 WL 5275187, at *13 ("[T]his factor weighs against transfer to Pennsylvania since there are claims brought under Florida law but not under Pennsylvania law.").

Here, six of Plaintiff's claims arise under federal law, and six arise under Florida law. ECF No. [15] at 12-27. While "the District of [Utah] is no more familiar than this District" with respect to the federal causes of action, *Iconic Leaf Cigars*, 2013 WL 12093806, at *2, the same cannot be said for the Florida law claims. Because only a Utah court would be required to interpret and apply out-of-state statutory claims, this case is better suited to remain in Florida. Accordingly, this factor weighs against transfer. *See Go 770*, 2024 WL 4581259, at *6 ("Since New York law governs this dispute, it is more appropriate for a federal court in New York to hear the case as it will be more familiar with the applicable New York law than a federal court sitting in Florida."); s*ee also Food Mktg. Consultants, Inc. v. Sesame Workshop*, No. 09-61776-CIV., 2010 WL 1571206, at *10 (S.D. Fla. Mar. 26, 2010) ("While this Court is capable of construing New York law, federal courts in New York engage in that exercise with far greater frequency and, thus, can fairly be expected to have developed some expertise in that area.").

### h. Weight Accorded to Plaintiff's Choice of Forum

"Traditionally, a plaintiff's choice of forum is accorded considerable deference, and unless . . . clearly outweighed by other considerations, it should not be disturbed." *Sorensen v. Am.*

*Airlines, Inc.*, Case No. 22-cv-20265, 2022 WL 2065063, at *7 (S.D. Fla. June 8, 2022) (citing

*Robinson v. Giramarco & Bill, P.C.*, 74 F.3d 253 (11th Cir. 1996)). While a plaintiff's choice of

forum is entitled to less weight "where the operative facts underlying the cause of action did not

occur within the forum chosen by the Plaintiff," *Tuuci*, 2023 WL 5275187, at *13 (quoting

*Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985)), that is not the

case here. In trademark infringement actions, operative facts may arise "wherever the consuming

public is likely to be confused by the alleged infringement." *Iconic Leaf Cigars*, 2013 WL

12093806, at *2. Given that fifteen of fifty retail locations selling Plaintiff's products are in South

Florida, ECF No. [15] at ¶ 21, at least some of the operative facts underlying Plaintiff's claims

occurred in this District.

"Furthermore, plaintiff's choice of a forum warrants less deference if 'there is any

*indication* that plaintiff's choice of forum is the result of forum shopping.'" *Sorensen*, 2022 WL

2065063, at *7 (quoting *Combs v. Fla. Dep't of Corr.*, 461 F. Supp. 3d 1203, 1214 (N.D. Fla.

2020) (emphasis added)). Defendants argue that Plaintiff acted in bad faith by filing subsequent

parallel litigation in Florida, despite being a "New York-based Delaware LLC" and alleging

nationwide sales. ECF No. [41] at 4. But beyond this bare allegation, Defendants offer no support

for the claim. *See Sorensen*, 2022 WL 2065063, at *7 (rejecting the defendant's unsupported

assertion that plaintiff's "brazen and shameless efforts to forum shop" warranted disregard of the

chosen forum). Because Defendants have provided no valid basis to displace Plaintiff's forum

choice, this factor weighs in favor of retaining the case.

### i.   Trial Efficiency and the Interests of Justice in Totality

To determine whether trial efficiency and the interests of justice favor transfer, the Court

considers "administrative difficulties flowing from court congestion, the local interest in having

localized controversies decided at home, the avoidance of unnecessary problems in conflict of laws or application of foreign law, and the unfairness in imposing jury duty on citizens in an unrelated forum." *Rothschild Connected Devices Innovations, LLC v. Coca-Cola Co.*, CASE NO. 15-24067-CIV, 2016 WL 1546427, at *7 (S.D. Fla. Apr. 15, 2016).

Aside from asserting that "judicial economy via consolidation with the Utah Action outweighs Florida's interest, where only DP Derm resides," ECF No. [27] at 6, "Defendant[s] fail[] to explain why trial efficiency and the interest of justice are best served by transferring this case[.]" *AutoNation, Inc. v. Hall*, CASE NO. 19-60291-CIV, 2019 WL 3712008, at *10 (S.D. Fla. May 29, 2019) (denying a motion to dismiss where a defendant has not shown the interest of justice requires transfer). On the other hand, Plaintiff cites statistics, which Defendants do not dispute, that demonstrate that civil cases are disposed of considerably faster in this district than in the District of Utah. ECF No. [37] at 16. Further, Plaintiff argues that proceedings here are more advanced: a trial date is set in the Southern District of Florida, while discovery has yet to begin in Utah. *Id.* Moreover, only Biosoft is named in the Utah action, whereas all necessary Defendants have been joined in this district. *Id.*

Upon review, the Court finds that Defendants are no more burdened by litigating in this forum than they would be in the District of Utah. Here, one Defendant resides in Florida, and the remaining Defendants are international entities. Moreover, "the record plainly demonstrates that significant judicial resources and substantial time and energy have been expended in the [Southern District of Florida]." *Sorensen*, 2022 WL 2065063, at *8. Lastly, the public's interest in a fast and efficient adjudication of the claims is not hindered by litigating this action in this district. In fact, to the contrary, the statistics "speak for themselves" and demonstrate that this Court enjoys a considerable advantage in median pendency from civil case filing to disposition and trial. *See*

*Fruitstone,* 464 F. Supp. 3d at 1285. For these reasons, trial efficiency and the interests of justice do not weigh in Defendants' favor.

### j.   Weighing the Balance of Considerations

As noted, a "'plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.'" *Robinson*, 74 F.3d at 260 (quoting *Howell v. Tanner*, 740 F.2d 322 (5th Cir. 1984)). Indeed, "transfer can only be granted where the balance of convenience of the parties strongly favors the defendant." *Fruitstone*, 464 F. Supp. 3d at 1285 (quoting *Steifel Labs., Inc. v. Galderma Labs., Inc.*, 588 F. Supp. 2d 1336, 1339 (S.D. Fla. 2008)). Here, Defendant has not met its burden to demonstrate that transfer is appropriate. Although Defendant argues that it is more convenient to litigate in the District of Utah, given their counsel's location, Defendants have not demonstrated that this merits dispositive weight. Likewise, Defendants have not shown that the factors, when assessed as a whole, weigh so strongly in their favor that Plaintiff's choice of forum should be disturbed. Based upon a weighing of the relevant § 1404(a) factors, transfer is improper. Accordingly, Defendants' Motion to Transfer is denied.

### IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   Defendants' Motion, **ECF No. [27]**, is **DENIED**.

2.   Defendants shall file their Answer to Plaintiff's Complaint **no later than August 29, 2025.**

Case No. 25-cv-20713-BLOOM/Elfenbein

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 8, 2025.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record