UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-20713-BLOOM/Elfenbein

EXOTROPIN, LLC,

    Plaintiff,

v.

DP DERM, LLC, BIOSOFT
(AUSTRALIA) PTY LTD, and
DERMAPENWORLD FZ LLE,

    Defendants.
_____/

**ORDER ON DERMAPENWORLD'S MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

**THIS CAUSE** is before the Court upon Defendant Dermapenworld FZ LLE's ("Defendant") Motion to Quash Service of Process and Motion to Dismiss for Lack of Personal Jurisdiction ("Motion"), ECF No. [42]. Plaintiff Exotropin, LLC ("Plaintiff") filed a Response in Opposition, ("Response"), ECF No. [45], to which Defendant filed a Reply, ECF No. [49]. The Court has carefully reviewed the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is denied.

**I.    BACKGROUND**

This lawsuit arises from Defendant's use of the "EXO SKIN" Mark, despite knowing of Plaintiff and its prior use of its "EXO SKIN SIMPLE" Mark and EXO SKIN SIMPLE® Registration. ECF No. [15] at ¶ 33. Following the filing of its initial complaint against Defendants DP Derm LLC ("DP Derm") and Biosoft (Australia) PTY LTD ("Biosoft"), Plaintiff discovered that Biosoft executed and recorded a "Trademark/Service Mark Assignment," with the United States Patent and Trademark Office ("USPTO"), transferring ownership of trademarks to

Dermapenworld. ECF No. [13-2]. Therefore, Plaintiff sought and obtained leave to file an Amended Complaint to add Defendant. ECF Nos. [13], [14]. In its Amended Complaint, Plaintiff asserts twelve claims against Defendants, six under the Federal Trademark Act, 15 U.S.C. § 1051 ("Lanham Act") and six under Florida law pursuant to Fla. Stat. § 495.161. ECF No. [15]. Plaintiff alleges that the infringing goods bearing the infringing mark are advertised and offered for sale online on Defendant's website, www.dermapenworld.com, which can be accessed from the United States, and enables U.S. based consumers to purchase the infringing goods on Defendant's website. *Id.* at ¶¶ 36-37.

On March 27, 2025, Plaintiff sought leave to effect service of process via email to U.S. counsel for Defendant, Grant Clayton ("Clayton"). *See* ECF No. [18]. Plaintiff stated that Clayton represented Defendant in over forty pending applications before the USPTO, including applications that sought to register the infringing mark. *Id.* at 1. Thus, Plaintiff asserted that alternative service of process would expedite service of initial process on Defendant and was proper under Federal Rule of Civil Procedure 4(f)(3). *Id.* at 3. The Court granted Plaintiff's motion. ECF No. [20].

In the instant Motion, Defendant seeks to quash service of process because it violates United Arab Emirates ("UAE") law and procedural due process. ECF No. [42]. Further, Defendant contends that the Court lacks personal jurisdiction, as Defendant is a UAE-based entity with no Florida ties. *Id.* Plaintiff responds that service on Defendant via email to Clayton was proper under Rule 4(f)(3) and pursuant to the Court's Order. ECF No. [45]. Plaintiff asserts that dismissal is also improper as the Court has personal jurisdiction over Defendant. *Id.* Defendant replies that service was improper because Plaintiff failed to attempt service by conventional means or show the necessity for alternative service. ECF No. [49].

Case No. 25-cv-20713-BLOOM/Elfenbein

## II. LEGAL STANDARD

### A. Service of Process

The Eleventh Circuit has determined that Rule 4 of the Federal Rules of Civil Procedure "is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Sanderford v. Prudential Ins. Co. of Am.*, 902 F.2d 897, 900 (11th Cir. 1990) (quoting *United Food & Com. Workers Union v. Alpha Beta Co.,* 736 F.2d 1371, 1382 (9th Cir. 1984)). Under Rule 4(f), an individual may be served:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>>
>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>>
>> (C) unless prohibited by the foreign country's law, by:
>>
>>> (i) delivering a copy of the summons and of the complaint to the individual personally; or
>>>
>>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

When challenging service of process, the defendant "must describe with specificity how the service of process failed to meet the procedural requirements of Federal Rule of Civil Procedure 4." *Hollander v. Wolf*, No. 09–80587–CIV, 2009 WL 3336012, at *3 (S.D. Fla. Oct. 14, 2009) (citing *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1400 (7th Cir. 1993)). "Once

the defendant carries that burden, then the burden shifts to the plaintiff to prove a *prima facie* case of proper service of process." *Fru Veg Mktg., Inc. v. Vegfruitworld Corp.*, 896 F. Supp. 2d 1175, 1182 (S.D. Fla. 2012). "If the plaintiff can establish that service was proper then the burden shifts back to the defendant to 'bring strong and convincing evidence of insufficient process.'" *Id.* (quoting *Hollander*, 2009 WL 3336012, at *3). Furthermore, "[w]here the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *see also Kammona v. Onteco Corp.*, 587 F. App'x 575, 578 (11th Cir. 2014) ("Any conflict in the parties' affidavits or pleadings should be resolved in favor of the plaintiff.").

### B. Personal Jurisdiction

Motions to dismiss for lack of personal jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(2). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). "Once the plaintiff pleads sufficient material facts to form a basis for *in personam* jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings." *Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1388 (S.D. Fla. 2014), *aff'd sub nom. Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201 (11th Cir. 2015).

"If defendant sufficiently challenges plaintiff's assertions through affidavits, documents, or testimony, then the burden shifts back to plaintiff, who must affirmatively support its jurisdictional allegations and may not merely rely upon factual allegations set forth in the complaint." *Carmouche*, 36 F. Supp. 3d at 1388 (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1986)); *see also United Techs. Corp.*, 556 F.3d at 1274 ("Where . . . the

4

defendant challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" (quoting *Meier ex rel. Meier*, 288 F.3d at 1269)). Conclusory statements, "although presented in the form of factual declarations, are in substance legal conclusions that do not trigger a duty for Plaintiffs to respond with evidence of their own supporting jurisdiction." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999).

In addressing whether personal jurisdiction over a nonresident defendant exists, "[t]he district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citing *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988)). "[W]here the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff." *Id.*

As part of the plaintiff's *prima facie* case, the Court conducts a two-part inquiry when deciding the issue of personal jurisdiction. *Sculptchair*, 94 F.3d 623. First, the court must determine whether the applicable state statute governing personal jurisdiction is satisfied. *Id.* at 626. When applying Florida law, the Florida long-arm statute recognizes two kinds of personal jurisdiction over a nonresident defendant: general jurisdiction and specific jurisdiction. *See* Fla. Stat. §§ 48.193(1)-(2); *see also easyGroup Ltd. v. Skyscanner, Inc.*, Case No. 20-20062-CIV, 2020 WL 5500695, at *6 (S.D. Fla. Sept. 11, 2020). The Eleventh Circuit has held that the reach of Florida's long-arm statute is a question of state law, and that federal courts must adhere to the statutory constructions offered by the Florida Supreme Court and Florida's District Courts of Appeal. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013). If the requirements of the long-arm statute are satisfied, under either general jurisdiction or specific

jurisdiction, then the court must also consider the federal Due Process Clause. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250-51 (11th Cir. 2000).

The court's analysis of the Due Process Clause depends on three factors: (1) defendant's purposeful availment of the forum state; (2) the cause of action arising out of the activities of which the defendant purposefully availed himself; and (3) reasonable foreseeability of the defendant being haled into court in the forum state. *See id.* (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)). In addition, the court must determine whether exercising jurisdiction will comport with traditional notions of fair play and substantial justice, meaning the court must balance: "(a) the burden on the defendant; (b) the forum state's interest in adjudicating the dispute; (c) the plaintiff's interest in obtaining convenient and effective relief; (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (e) the shared interest of the several states in furthering fundamental substantial social policies." *Id.* at 1251 (citing *Burger King*, 471 U.S. at 466).

### III. DISCUSSION

#### A. Motion to Quash Service of Process

Defendant argues that the Court must quash service of process because the Court's Order violates procedural due process. ECF No. [42] at 7. Further, Defendant contends that Plaintiff's alternate service by email to counsel violates UAE law and was not reasonably calculated to provide notice. *Id.* at 8-10. Defendant also claims that Plaintiff failed to show a necessity for alternative service. *Id.* at 10-12. Plaintiff responds that service on Defendant via email is proper under Rule 4(f)(3), as Clayton represents Defendant in many other matters and ultimately did provide notice to Defendant. ECF No. [45] 12-13. Plaintiff further asserts that Defendant mischaracterizes Rule 4(f)(3), as the Rule does not require Plaintiff to show necessity for alternative service, nor does it require Plaintiff to comply with UAE law. *Id.* at 14-17.

Case No. 25-cv-20713-BLOOM/Elfenbein

In arguing that the alternative service to Clayton by email was improper under Rule 4(f) and UAE law, Defendant relies on *Pliteq, Inc. v. Mostafa*, CASE NO. 23-CV-24868, 2024 WL 3070171, at *12-*13 (S.D. Fla. June 20, 2024), for support. *Id.* at *8. There, the court outlined the process by which service may be effectuated on UAE residents. 2024 WL 3070171, at *12-*13. However, as Plaintiff emphasizes, *Pliteq* is inapplicable, as the court was proceeding under Rule 4(f)(2)(A),[1] *id.* at *12, whereas here, Plaintiff sought to effectuate service pursuant to Rule 4(f)(3).

"Despite coming last in the list of available methods of service in Rule 4(f), there is no indication from the plain language of the Rule that the means described in Rule 4(f)(3) are to be used only as a last resort." *Spimerica Access Sols., LLC v. Palazzani Industrie, S.P.A.*, Civil Action No. 23-23222-Civ, 2023 WL 7129968, at *1 (S.D. Fla. Sept. 22, 2023). Therefore, "so long as the requested means is not prohibited by international agreement, a court has discretion to determine that the alternative means of service is appropriate under Rule 4(f)(3)." *Pliteq, Inc. v. Mostafa*, CASE NO. 23-24868-CIV, 2024 WL 2874859, at *1 (S.D. Fla. Jan. 29, 2024) (citing *Brookshire Bros. v. Chiquita Brands Int'l, Inc.*, No. 05-21962-CIV, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007)). As to the UAE, "[t]he Court [] finds that the UAE is not a party to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, nor any other treaty relating to service of process. . . . As such, [Plaintiff's] proposed method of service is not 'prohibited by international agreement.'" *Id.* at *2.

Next, due process requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an

---

[1] In a previous order in *Pliteq*, the court denied the plaintiff's motion for alternative service under Rule 4(f)(3), because it was unclear whether the defendant's UAE-based counsel had received the emails that plaintiff represented to have sent. *Pliteq, Inc. v. Mostafa*, CASE NO. 23-24868-CIV, 2024 WL 2874859, at *2-*3 (S.D. Fla. Jan. 29, 2024). The court's conclusion is likewise inapplicable because, here, there is no apparent concern that Clayton was not in communication with Plaintiff's counsel. *See* ECF No. [18].

7

opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Defendant represents that this required the Court to permit Defendant, and Clayton, an opportunity to object to Plaintiff's Motion for Alternative Service. ECF No. [42] at 9-10. The Court rejects this contention as contrary to precedent, as notice must be reasonably calculated to provide Defendant with notice and an opportunity to defend itself in the *action*, not the specific motion to authorize alternative service. Moreover, courts have often determined that email service is authorized under Rule 4(f)(3). *See, e.g.*, *U.S. Commodity Futures Trading Comm'n v. Aliaga*, 272 F.R.D. 617, 621 (S.D. Fla. 2011) (authorizing service via email and local counsel pursuant to Rule 4(f)(3)); *Spimerica Access Sols., LLC*, 2023 WL 7129968, at *2-*3 (authorizing service via email); *Brookshire Bros., Ltd.*, 2007 WL 1577771, at *2 (upholding authorization of service through local counsel). Here, the Court found Plaintiff's Motion to be reasonably calculated to provide Defendant with notice of the proceeding and an opportunity to be heard and finds no reason to vacate its decision. Accordingly, Defendant's Motion to Quash is denied.

### B. Motion to Dismiss

Defendant asserts that forcing itself, a UAE-based entity with no Florida ties, to defend this suit is baseless and an affront to justice. ECF No. [42] at 12. Defendant claims that its passive trademark rights, absent Florida activity, fall short of the "continuous and systematic" contacts required by Florida law, or the minimum contacts demanded by due process. *Id.* Plaintiff responds that Defendant's due process concerns fail in light of clear evidence that it has purposefully directed commercial activity towards Florida. ECF No. [45] at 17. As set forth below, the Court finds that Plaintiff has alleged a *prima facie* case of personal jurisdiction. Defendant fails to combat this with anything more than conclusory statements, which fall short of Defendant's burden. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999). Notwithstanding, the evidence submitted by Plaintiff does show that Defendant has purposefully availed itself in this jurisdiction.

8

### i. Florida's Long-Arm Statute

Florida's long-arm statute recognizes two kinds of personal jurisdiction over a non-resident defendant: general jurisdiction and specific jurisdiction. Fla. Stat. §§ 48.193(1)-(2). Relevant here, § 48.193(1)(a)(2) permits the Court to assert jurisdiction over any person who "commit[s] a tortious act within this state." Fla. Stat. § 48.193(1)(a)2. Defendant contends that there is no jurisdiction under Florida's long arm statute because Defendant does not own property or conduct business in Florida. ECF No. [42] at 13; *see also* ECF No. [42-1]. Plaintiff responds that goods bearing the EXO SKIN mark, as well as other products, can be purchased in Florida. ECF No. [45] at 17-18.

"The Eleventh Circuit has held that a plaintiff may validly invoke the Florida long-arm statute where an alleged trademark infringement occurred in Florida by virtue of a defendant's website's accessibility in Florida." *CreeLED, Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 699 F. Supp. 3d 1357, 1361 (S.D. Fla. 2023) (citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008)). Further, "allegations that a defendant sold infringing goods to Florida customers through a website are sufficient for a plaintiff to meet section 48.193(1)(a)(2)'s requirement for specific personal jurisdiction over Defendant." *Id.* (citing *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1354 (11th Cir. 2013)).

Here, Plaintiff alleges that Defendant markets and sells the infringing goods bearing the infringing mark on its website, www.dermapenworld.com, which can be accessed from the United States, including this District. ECF No. [15] at ¶¶ 36-37. Defendant presents no evidence to refute those allegations. *See Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009) ("The defendant . . . must 'raise[], through affidavits, documents or testimony, a meritorious challenge to personal jurisdiction.'" (quoting *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996) (alteration in original))). Therefore, Plaintiff has satisfied section 48.193(1)(a)(2).

### ii. Due Process

"[T]he constitutional litmus test for personal jurisdiction is whether the defendant 'purposefully established "minimum contacts" in the forum State.'" *Licciardello*, 544 F.3d at 1285 (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 473-74 (1985)). A nonresident defendant's intentional tort supports the exercise of personal jurisdiction over the defendant under the minimum contacts test even if it has no other contacts with the forum. *See Licciardello*, 544 F.3d at 1285. In *Licciardello*, the Eleventh Circuit determined that the allegation that a defendant committed an intentional tort against the plaintiff, namely using the plaintiff's trademark and the plaintiff's picture on a website accessible in Florida in a manner to imply the plaintiff's endorsement of the defendant and his products, was constitutionally permissible. *Id.* at 1287-88.

Here, Defendant contends that its passive trademark rights and lack of Florida agreements negate availment, and litigating 7,000 miles away imposes an intolerable burden. ECF No. [42] at 13. Plaintiff responds that there is clear evidence that Defendant has purposefully directed commercial activity toward Florida and this District. ECF No. [45] at 17. In support, Plaintiff provides evidence of an Instagram post by Defendant. ECF No. [45-1] at 5-17. The video was posted on May 7, 2025, by DP Derm, and identifies Defendant as one of the collaborators on the post. *Id.* at 2. Plaintiff provides the following transcription of the video:

> I'm Dr. Andrew R. Christie-Schwarz, and this is Dermapenworld. Join me in association with the very dynamic team from DP Derm as I present the Dermapenworld Regenerative Aesthetics Forum . . . . I'll be in . . . Miami on Wednesday, the 9th. . . . I look forward to seeing you in [the] USA very soon.

ECF No. [45] at 6; *see also* ECF No. [45-1] at 5-16. The caption of the post markets a "[d]eep dive into . . . EXO-SKIN[.]" *Id.* Plaintiff further provides screenshots from Defendant's website, which show items bearing the infringing mark being offered for sale and available in Florida. ECF No. [45] at 18.

10

Defendant replies that the Court cannot rely upon DP Derm's contacts with Florida to confer jurisdiction upon itself. ECF No. [49] at 5. Further, Defendant asserts that the Instagram post is an isolated incident that occurred after the filing of this suit, and its references to "Dermapenworld" are as a general business name, and do not constitute participation by Defendant. *Id.* at 6.

The Court finds that the record, including the evidence submitted by Plaintiff, adequately demonstrates that Defendant directed tortious conduct toward Florida. First, despite Defendant's contention to the contrary, the Instagram post clearly shows Defendant as a collaborator on the post. ECF No. [45-1] at 5. Defendant proffers no support, or explanation, to establish that the use of "Dermapenworld" is a "general business name" and not evidence of purposeful availment. Although Plaintiff ultimately bears the burden to allege personal jurisdiction, Defendant's conclusory and unsupported allegations are insufficient to raise a meritorious challenge. *Internet Sols. Corp.*, 557 F.3d at 1295. Further, Plaintiff provides evidence that Defendant's website is accessible in Florida, and that Defendant is selling the infringing goods in this District. ECF No. [45] at 18; ECF No. [15] at ¶¶ 36-37. Defendant fails to provide any caselaw that requires that "a plaintiff must allege a series of specific sales of infringing goods in Florida via a website." *CreeLED, Inc.*, 699 F. Supp. 3d at 1362. Therefore, Defendant has purposefully availed itself to Florida.

As to whether jurisdiction in this District "comports with fair play and substantial justice," courts have consistently found that "[t]he Constitution is not offended by Florida's assertion of its jurisdiction over such nonresident tortfeasors." *Licciardello*, 544 F.3d at 1288 (citation omitted). Further, "the Complaint alleges Defendant sells nongenuine goods to Florida consumers. . . . that suggests that Florida has an interest in protecting its consumers from purchasing such goods that

11

weighs in favor of the exercise of personal jurisdiction." *CreeLED, Inc.*, 699 F. Supp. 3d at 1363. Therefore, Defendant's assertion that litigating 7,000 away imposes an intolerable burden is wholly insufficient. Accordingly, the Court has personal jurisdiction over Defendant, and Defendant's Motion to Dismiss is denied.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant DERMAPENWORLD's Motion, **ECF No. [42]**, is **DENIED**.

2. Defendant shall file its Answer **no later than October 8, 2025**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on September 24, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record